**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**CATHERINE SPOON,** on behalf of herself and others similarly situated,
*Plaintiff*,
v.

**FAST RESPONSE HEATING & COOLING, LLC,**
*Defendant*.

**Case No. 3:26-cv-01852-N**

**DEFENDANT FAST RESPONSE HEATING & COOLING, LLC'S**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Fast Response Heating & Cooling LLC ("Fast Response" or "Defendant"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) respectfully requests this Court to dismiss Plaintiff Catherine Spoon's Class Action Complaint. In support of this Motion, Fast Response states as follows:

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. RELEVANT ALLEGATIONS ..... 2

III. LEGAL STANDARD ..... 2

IV. ARGUMENT ..... 3

A. Count I Should Be Dismissed Because § 227(c)(5) Creates A Private Right Of Action For "Telephone Calls," Not Text Messages. ..... 3

i. The Plain Text of § 227(c)(5), as Confirmed by Steidinger, Does Not Create a Private Right of Action for Text Messages ..... 3

ii. Under Loper Bright and McLaughlin, the Court Must Independently Interpret the TCPA as Written and Cannot Permit the FCC's Post-Enactment Orders to Expand § 227(c)(5)'s Private Right of Action ..... 5

iii. Plaintiff Alleges Only Text Messages and Therefore Cannot Pursue a Private DNC Claim Under § 227(c)(5) ..... 8

B. Because Count I Fails, Count II Likewise Fails to the Extent it is Predicated on the Alleged § 227(c)(5) Violation. ..... 8

C. Plaintiff Fails to Plead an Independent Texas-Law Basis for Count II. ..... 10

D. Plaintiff's Vague References to Unidentified "Affiliates, Agents, and/or Other Persons" Do Not State a Plausible Vicarious-Liability Theory. ..... 11

V. CONCLUSION ..... 12




4911-3331-9624v.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2, 3

*Cunningham v. Lifestyles Dev., LLC*,
2019 WL 4282039 (E.D. Tex. Aug. 8, 2019) .......... 12

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. Aug. 26, 2025) .......... 5

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) .......... 3

*Horton v. Nat'l Republican Senatorial Comm.*,
2023 WL 372066 (N.D. Tex. Jan. 23, 2023) .......... 10

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) .......... 1, 6, 7, 8

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
606 U.S. 146 (2025) .......... 1, 6, 7, 8

*Murphy v. DCI Biologicals Orlando, LLC*,
797 F.3d 1302 (11th Cir. 2015) .......... 7

*Ortega v. DiTommaso, Inc.*,
No. 5:24-cv-00369-JKP, 2025 WL 440278 (W.D. Tex. Feb. 6, 2025) .......... 11

*Ortega v. Keller Williams Realty, Inc*,
2025 WL 1673914 (W.D. Tex. Feb. 26, 2025) .......... 3

*Pinn v. CycleBar Franchising, LLC*,
2023 WL 8374749 (N.D. Tex. Dec. 4, 2023) .......... 1, 9

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
18 FCC Rcd. 14014 .......... 6

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) .......... 7

*Steidinger v. Blackstone Medical Services*,
2026 WL 2028517 (7th Cir. July 14, 2026) .......... *passim*

**Statutes**

47 U.S.C. § 227 .......... 9

47 U.S.C. § 227(a)(4) .......... 4

47 U.S.C. § 227(c)(5) .......... *passim*

47 U.S.C. § 227(e)(8)(A), (B) .......... 7

TEX. BUS. & COM. CODE § 305.053(a) .......... 9

TEX. UTIL. CODE § 55.12 .......... 10

Texas Business & Commerce Code § 305.053 .......... 1, 2, 8, 9

Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. .......... 2

**Other Authorities**

47 C.F.R. § 64.1200(c) .......... 2, 9

Creates A Private Right Of Action For "Telephone Calls," .......... 3

Federal Rule of Civil Procedure 12(b)(6) .......... 1, 2, 12

*Notice of Proposed Rulemaking*, 17 FCC Rcd. 17459 ¶ 1 (2002) .......... 6

Rule 8 .......... 12

Defendant Fast Response Heating & Cooling LLC ("Fast Response" or "Defendant"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) respectfully requests this Court to dismiss Plaintiff Catherine Spoon's Class Action Complaint. In support of this Motion, Fast Response states as follows:

## I. INTRODUCTION

1. Plaintiff's claims fail because the Complaint alleges only text messages, not the "telephone calls" required by § 227(c)(5). Plaintiff bases Count I entirely on promotional text messages she allegedly received from Defendant. But § 227(c)(5) provides a private right of action for the receipt of more than one "telephone call." The Seventh Circuit recently addressed this precise issue in *Steidinger v. Blackstone Medical Services*, 2026 WL 2028517 (7th Cir. July 14, 2026), and held that text messages are not telephone calls under § 227(c)(5). This Court should follow *Steidinger* and dismiss Count I.

2. First, the plain text of § 227(c)(5) does not provide a private right of action for text messages. Congress distinguished between calls and messages elsewhere in the TCPA, but limited § 227(c)(5) to "telephone calls." And under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), the Court must independently interpret the statute rather than treat the FCC's later interpretation as controlling. Because Plaintiff alleges texts, not calls, Count I fails.

3. Second, Count II fails to the extent it rests on the same TCPA violation. The Northern District of Texas has held that a § 305.053 claim based on a TCPA violation is coextensive with the underlying federal claim. *Pinn v. CycleBar Franchising, LLC*, 2023 WL 8374749, at *2 (N.D. Tex. Dec. 4, 2023). Because Plaintiff's § 227(c)(5) claim fails, she cannot rely on that same claim as the basis for liability under § 305.053.

4. Third, the Complaint does not plead an independent Texas-law basis for Count II.

Plaintiff alleges that Defendant used an "automatic dialing announcing device," but does not plead facts showing that the equipment had the characteristics required by Texas law, including the ability to convey a prerecorded or synthesized voice message. Her conclusory allegation that the equipment meets the statutory definition is insufficient to state an independent Texas claim.

5. Finally, the Complaint does not plead a basis for vicarious liability. Plaintiff refers generally to unidentified "affiliates, agents, and/or other persons or entities acting on Defendant's behalf," but alleges no facts establishing an agency relationship or other basis for holding Defendant liable for the conduct of an unidentified third party.

6. For these reasons, Counts I and II should be dismissed under Rule 12(b)(6).

## II. RELEVANT ALLEGATIONS

7. In her Complaint, Plaintiff alleges that, in May 2026, she received promotional text messages on her cellular telephone number, which she claims had been registered on the National Do-Not-Call Registry since March 19, 2026. Compl. ¶¶ 35–44. Based exclusively on those text messages, Plaintiff asserts that Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). *Id*.

8. She further alleges in Count II, under the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq., that (1) Defendant used an "automatic dialing announcing device" to send text messages without her consent; and (2) the same messages violated the TCPA and its implementing regulations, thereby giving rise to a claim under § 305.053. Compl. ¶¶77-90.

## III. LEGAL STANDARD

9. To survive a motion to dismiss, Plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

10. Although the Court accepts well-pleaded factual allegations as true, it need not accept legal conclusions, conclusory allegations, threadbare recitations of statutory elements, or naked assertions devoid of factual enhancement. *See Ortega v. Keller Williams Realty, Inc*, 2025 WL 1673914, at *3 (W.D. Tex. Feb. 26, 2025) (citations omitted).

## IV. ARGUMENT

### A. Count I Should Be Dismissed Because § 227(c)(5) Creates A Private Right Of Action For "Telephone Calls," Not Text Messages.

11. Whether Plaintiff's alleged text messages fall within the private right of action created by § 227(c)(5) presents a pure question of statutory interpretation that this Court may resolve as a matter of law. In construing § 227(c)(5), the Court must consider not only the provision's text, but also its place within the TCPA as a whole, because courts read "the words of a statute . . . in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000).

#### i. The Plain Text of § 227(c)(5), as Confirmed by Steidinger, Does Not Create a Private Right of Action for Text Messages.

12. The Court's analysis begins with the statutory text. Section 227(c)(5), the

provision on which Plaintiff bases Count I, expressly limits its private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Plaintiff does not allege that she received any "telephone calls." Instead, her allegations are exclusively the receipt of SMS text messages. The threshold question, therefore, is whether Congress's use of the term "telephone call" in § 227(c)(5) encompasses a text message. It does not.

13. That distinction is significant because Congress knew how to distinguish between a telephone "call" and a "message" and expressly did so in the TCPA. Section 227(a)(4), for example, defines a "telephone solicitation" as: "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4) (emphasis added). Congress therefore used the broader phrase "telephone call or message" when defining the communications that can constitute a telephone solicitation, but chose materially narrower language when creating the private cause of action in § 227(c)(5). Rather than authorizing suit by anyone who received more than one unlawful "telephone solicitation" or "telephone call or message," Congress limited the private action to a person who received more than one "telephone call."

14. The United States Court of Appeals for the Seventh Circuit recently addressed this precise statutory question and held that § 227(c)(5) does not authorize a private action based upon text messages. *See Steidinger,* 2026 WL 2028517 (7th Cir. July 14, 2026). Like Plaintiff here, the plaintiffs in *Steidinger* sought relief under § 227(c)(5) based upon allegedly unwanted marketing text messages. The Seventh Circuit held that text messages are not "telephone calls" within the meaning of § 227(c)(5) and affirmed dismissal of the claims. *See id.*

15. Although *Steidinger* is not binding on this Court, it is directly on point federal appellate authority addressing the precise statutory language at issue here. Its textual analysis is persuasive and should be followed. As *Steidinger* recognized, the ordinary meaning of a "telephone call" when Congress enacted the TCPA in 1991 did not encompass an SMS text message. *Steidinger*, 182 F.4th at 535. "It's undisputed that 'telephone call' couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year." *Id.* (citing *Blow v. Bijara, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016).

16. A district court applying the same textual analysis recently reached the same conclusion. In *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272 (N.D. Fla. Aug. 26, 2025), the court considered whether § 227(c)(5)'s reference to a "telephone call" encompasses an SMS text message and concluded that it does not. The court therefore dismissed the plaintiff's § 227(c)(5) claims because they were based on text messages rather than telephone calls. *Id.* at 1275-76. That conclusion follows the ordinary use of the statutory words. An ordinary speaker does not describe sending a text message as making a "telephone call." Section 227(c)(5) uses the more specific phrase "telephone call," and that statutory language should be given its ordinary meaning.

17. The Court should therefore follow *Steidinger* and hold that the private cause of action Congress created in § 227(c)(5) does not encompass Plaintiff's alleged text messages.

ii. <u>Under Loper Bright and McLaughlin, the Court Must Independently Interpret the TCPA as Written and Cannot Permit the FCC's Post-Enactment Orders to Expand § 227(c)(5)'s Private Right of Action.</u>

18. The conclusion compelled by § 227(c)(5)'s text cannot be displaced by the FCC's later administrative determination that, for certain purposes under the TCPA, the word "call" encompasses text messages.

19. In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled *Chevron* deference and restored to federal courts their traditional responsibility to determine the meaning of federal statutes. Courts must decide for themselves whether "the law means what the agency says," and must employ "the reading the court would have reached if" no agency were involved. *Id.* at 397 (internal quotation marks and citation omitted). Critically, the Supreme Court emphasized that "[e]very statute's meaning is fixed at the time of enactment." *Id.* (internal quotation marks and citation omitted).

20. The Supreme Court subsequently applied that principle specifically to FCC interpretations of the TCPA in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). There, the Court held that district courts are not bound by the FCC's interpretation of the TCPA and instead must determine the statute's meaning "under ordinary principles of statutory interpretation." *McLaughlin*, 606 U.S. at 152. Accordingly, this Court must determine the best interpretation of § 227(c)(5) as enacted by Congress in 1991, without treating the FCC's subsequent policy decisions as controlling.

21. That matters here because text messages entered the TCPA regulatory framework through post-enactment FCC action rather than through the language Congress used in § 227(c)(5). In 2002, more than a decade after Congress enacted the TCPA, the FCC initiated a rulemaking intended in part to address "[n]ew technologies" that had emerged since the TCPA's enactment. *See Notice of Proposed Rulemaking*, 17 FCC Rcd. 17459 ¶ 1 (2002). The following year, the FCC stated that the term "call" under the TCPA "encompasses both voice calls and text calls." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003). Significantly, the FCC's 2003 discussion concerned the meaning of "call" in § 227(b), not the distinct phrase "telephone call" Congress used in §

227(c)(5). The agency's reasoning rested largely on its view that extending the TCPA to emerging technologies furthered the statute's purposes rather than on statutory language demonstrating that Congress used "telephone call" to include SMS messages in 1991.

22. Subsequent courts often accepted the FCC's interpretation because then-existing administrative-law principles required or were understood to require deference to the agency. *See*, e.g., *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305-06 (11th Cir. 2015). That administrative history cannot substitute for the language Congress enacted. After *Loper Bright* and *McLaughlin*, the question is no longer whether the FCC has chosen to characterize a text message as a "call." The question is whether Congress used the phrase "telephone call" in § 227(c)(5) to encompass SMS text messages when it enacted that provision in 1991. It did not.

23. The surrounding statutory text reinforces that conclusion. Congress has demonstrated that it understands the difference between voice calls and text messages and knows how to regulate both expressly. In 2018, Congress amended § 227(e) concerning caller-identification information and expressly distinguished "a call made using a voice service" from "a text message sent using a text messaging service." *See* 47 U.S.C. § 227(e)(8)(A), (B). That distinction is significant. Where Congress uses different terms within the same statutory scheme, courts ordinarily presume that the different words carry different meanings. And treating "telephone call" and "text message" as synonymous would improperly render Congress's express distinction between calls and messages superfluous.

24. Yet Congress did not amend § 227(c)(5) to authorize private suits based upon receipt of more than one "telephone call or text message." The Court should not supply language Congress chose not to enact. Thus, even if an FCC regulation purports to prohibit certain

marketing text messages, Plaintiff must separately establish that Congress authorized her to bring a private action for those communications under § 227(c)(5). *Steidinger* correctly holds that Congress did not.

iii. Plaintiff Alleges Only Text Messages and Therefore Cannot Pursue a Private DNC Claim Under § 227(c)(5).

25. Plaintiff alleges that she "received texts from Defendant starting in May of 2026." Compl. ¶ 44. She identifies the number from which the texts were sent and includes screenshots of those messages in the Complaint. *Id.* ¶¶ 45–47. The Complaint does not allege that Defendant made a single telephone call to Plaintiff. Instead, Count I is based entirely on text messages.

26. That distinction is dispositive. As explained above, § 227(c)(5) authorizes a private action only for a person who "has received more than one telephone call within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). And under *Loper Bright* and *McLaughlin*, the Court must independently apply the statutory language Congress enacted, rather than treat the FCC's later interpretation of the TCPA as controlling. *Steidinger* did exactly that and held that a text message is not a "telephone call" within the meaning of § 227(c)(5).

27. Plaintiff therefore cannot state a § 227(c)(5) claim merely by alleging that the texts qualify as "telephone solicitations" or otherwise fall within the FCC's regulations. Whatever the scope of those regulations, Congress limited the private right of action in § 227(c)(5) to the receipt of more than one "telephone call." Plaintiff alleges none.

28. Accordingly, even accepting the Complaint's factual allegations as true, Plaintiff has not alleged the conduct necessary to invoke § 227(c)(5)'s private right of action. Under *Steidinger*, Count I should be dismissed with prejudice.

**B. Because Count I Fails, Count II Likewise Fails to the Extent it is Predicated on the Alleged § 227(c)(5) Violation.**

29. Count II asserts a claim under Texas Business & Commerce Code § 305.053

based, in substantial part, on the same alleged TCPA violation asserted in Count I. Compl. ¶¶ 83–90. Plaintiff cannot preserve that claim merely by repackaging the deficient federal theory as a state-law cause of action. Section 305.053(a) permits an action based on a communication that violates "47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A." TEX. BUS. & COM. CODE § 305.053(a).

30. The Northern District of Texas has construed § 305.053 as coextensive with the TCPA when the asserted Texas claim is predicated upon an alleged TCPA violation. In *Pinn v. CycleBar Franchising, LLC*, the court held that "[t]he Texas TCPA [§ 305.053] proscribes only that conduct which is also prohibited by the TCPA" and that "[i]f no violation of the TCPA exists, there is no violation of the Texas TCPA." *Pinn*, 2023 WL 8374749, at *2 (N.D. Tex. Dec. 4, 2023) (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014)). The court therefore applied the requirements of the underlying TCPA claim to the plaintiff's § 305.053 claim and dismissed both when the federal predicate was deficient.

31. That reasoning applies here. Plaintiff expressly alleges in Count II that § 305.053 provides a cause of action because Defendant supposedly violated 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(c). But, for the reasons set forth above, the communications alleged in the Complaint do not support a private claim under § 227(c)(5). Plaintiff alleges text messages, whereas Congress limited the private right of action in § 227(c)(5) to persons who have received more than one "telephone call" within twelve months.

32. Under *Steidinger*, those text messages do not fall within the private right of action Congress created in § 227(c)(5). And under *Pinn*, Plaintiff cannot take a federal theory that fails under § 227(c)(5) and obtain a different result merely by invoking § 305.053. Thus, Plaintiff should not be permitted to avoid § 227(c)(5)'s limitation to "telephone calls" by asserting the

same alleged conduct under Texas law.

33. Accordingly, to the extent Count II is based on the alleged TCPA violation asserted in Count I, it should be dismissed.

**C. Plaintiff Fails to Plead an Independent Texas-Law Basis for Count II.**

34. If Plaintiff's derivative TCPA theory fails, Count II can survive only if the Complaint adequately alleges an independent violation of Texas law. It does not.

35. Plaintiff alleges that Defendant used an "automatic dialing announcing device" to send the text messages at issue. Compl. ¶¶ 55–61. Texas law, however, defines an automated dial announcing device as equipment that can, among other things, "convey, alone or in conjunction with other equipment, a prerecorded or synthesized voice message to the number called without the use of a live operator." TEX. UTIL. CODE § 55.12.

36. The Complaint alleges no facts satisfying that requirement. Paragraphs 55 through 60 allege that the equipment could store or produce telephone numbers, automatically transmit text messages, process responses, and send standardized messages without human intervention. Compl. ¶¶ 55–60. But Plaintiff does not allege that the equipment could convey a prerecorded or synthesized voice message—the characteristic required by the Texas statutory definition.

37. Instead, Plaintiff simply concludes that "[s]uch equipment constitutes an 'automatic dialing announcing device.'" Compl. ¶ 61. That legal conclusion cannot supply the facts missing from the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts need not accept legal conclusions as true); *Horton v. Nat'l Republican Senatorial Comm.*, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) (holding that conclusory allegations and formulaic recitations of an ATDS's elements are insufficient to plausibly allege use of an ATDS).

38. Thus, if Plaintiff's derivative TCPA theory is dismissed, her allegations concerning the purported "automatic dialing announcing device" do not provide an independent

basis for Count II and therefore should be dismissed.

### D. Plaintiff's Vague References to Unidentified "Affiliates, Agents, and/or Other Persons" Do Not State a Plausible Vicarious-Liability Theory.

39. "To support a TCPA cause of action or a cause of action under the FCC's regulations, a plaintiff can allege either direct liability by showing that the defendant initiated the offending telemarketing calls, or vicarious liability by showing that an entity in an agency relationship with the defendant initiated the calls." *Ortega v. DiTommaso, Inc.*, No. 5:24-cv-00369-JKP, 2025 WL 440278 at *5 (W.D. Tex. Feb. 6, 2025) (internal citation omitted). A plaintiff can establish vicarious liability in this context by common law agency principles. *Id.* (citations omitted). An agency relationship exists where a principal "manifests assent to an agent . . . that the agent shall act on the principal's behalf and subject to the principal's control." *Id.* (citations omitted). "Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to the inference of an agency relationship using generalized as opposed to evidentiary facts." *Id.*

40. Here, Plaintiff simply attaches the labels "affiliates," "agents," and "other persons or entities acting on Defendant's behalf" to unidentified third parties. There is an additional defect in both Counts to the extent Plaintiff seeks to impose liability upon Fast Response for communications allegedly initiated by someone other than Fast Response itself. Throughout the Complaint, Plaintiff repeatedly attributes conduct to Defendant "and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf." *See e.g.,* Compl. ¶¶ 73, 75–76. But Plaintiff identifies none of those supposed entities. The Complaint does not identify any alleged affiliate that sent the communications, any third-party texting provider alleged to have originated the communications, any agreement between Fast Response and such a party, any facts showing Fast Response's right to control the alleged third party, any conduct by Fast Response conferring

actual authority, any manifestation by Fast Response supporting apparent authority, or any facts demonstrating knowing ratification of allegedly unauthorized conduct.

41. The distinction between direct and vicarious liability is important. Three theories of agency could support a claim for vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification. Plaintiff's Complaint does not clarify under which theory, if any he pursues his claim for vicarious liability. *See Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019). Regardless, none survives under the facts alleged.

42. Plaintiff alleges that the messages identified Fast Response Heating & Cooling and promoted Fast Response's services. Those allegations form the basis of Plaintiff's assertion that Fast Response itself is responsible for the texts. But if Plaintiff alternatively contends that someone else originated the communications and Fast Response should be liable for that person's conduct, she must plausibly plead the factual basis for that agency theory.

43. Rule 8 requires sufficient facts to make the asserted basis of liability plausible before the parties embark on discovery. The fact that an unidentified communication promoted a company's products or services does not, without more, establish that whoever originated the communication was the company's agent. Nor can Plaintiff preserve an unspecified agency theory for discovery by inserting "and/or its affiliates, agents, and/or other persons" wherever the Complaint refers to Defendant.

44. Accordingly, to the extent Plaintiff seeks to impose vicarious liability upon Fast Response for communications initiated by unidentified affiliates, agents, marketing vendors, or other third parties, that theory should be dismissed under Rule 12(b)(6).

## V. <u>CONCLUSION</u>

For these reasons, Defendant respectfully requests that the Court dismiss Count I because

Plaintiff alleges only text messages, not the "telephone calls" required by § 227(c)(5), and dismiss Count II because the underlying TCPA claim fails and the Complaint does not otherwise plead facts sufficient to state an independent claim under Texas law. Defendant further requests dismissal of any vicarious-liability theory based on unidentified third parties and such other relief to which Defendant may be entitled.

Dated: August 17, 2026

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Earl L. Ingle*
**Earl L. Ingle**
Texas Bar No. 24097234
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: 713.222.1470
Facsimile: 713.222.1475
eingle@munsch.com

**-AND-**

**Jenniffer Cabrera** (*pro hac vice forthcoming*)
J. Cabrera Law, P.A.
1825 NW Corporate Blvd, Ste. 110
Boca Raton, Florida 33431
Telephone: 561-834-0883
jc@jcabreralaw.com
***Counsel for Defendant Fast Response Heating & Cooling, LLC***

**OF COUNSEL:**

By: */s/ Maddison Craig*
**MADDISON CRAIG**
**MUNSCH HARDT KOPF & HARR, P.C.**
Texas Bar No. 24137348
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Phone: (214) 855-7570
Fax: (214) 855-7584
mcraig@munsch.com

**CERTIFICATE OF SERVICE**

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned counsel for the Defendant certifies the foregoing document has been filed with the Court and served upon all known counsel of record via the Court's electronic case filing system on August 17, 2026.

*/s/ Earl L. Ingle*
Earl L. Ingle