**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**CATHERINE SPOON,** on behalf of herself and others similarly situated,
*Plaintiff*,

v.

**Case No. 3:26-cv-01852-N**

**FAST RESPONSE HEATING & COOLING, LLC,**
*Defendant*.
_____________________________________/

**DEFENDANT FAST RESPONSE HEATING & COOLING, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Fast Response Heating & Cooling LLC ("Fast Response" or "Defendant"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) respectfully requests this Court to dismiss Plaintiff Catherine Spoon's First Amended Class Action Complaint, ECF No. 15. In support of this Motion, Fast Response states as follows:

## I. INTRODUCTION

Plaintiff's claims fail because they are based entirely on text messages, while § 227(c)(5) creates a private right of action only for the receipt of more than one "telephone call." The Seventh Circuit recently addressed this precise issue in *Steidinger v. Blackstone Medical Services*, 182 F.4th 532 (7th Cir. July 14, 2026), and held that text messages are not "telephone calls" under § 227(c)(5). This Court should follow *Steidinger* and the growing body of authority reaching the same conclusion.

First, the statutory text controls. Congress used "telephone call or message" elsewhere in the TCPA but limited the private right of action in § 227(c)(5) to "telephone calls." That distinction is reinforced by Congress's later amendments expressly distinguishing voice calls from text messages. And under *Loper Bright* and *McLaughlin*, the Court must independently interpret the



4911-3331-9624v.2

statute as Congress enacted it rather than treat the FCC's later interpretation of "call" as controlling. Even if an FCC regulation reaches certain marketing text messages, Plaintiff must still establish that Congress created a private right of action for those communications under § 227(c)(5). *Steidinger* correctly holds that it did not.

Second, Count II cannot avoid that statutory limitation by invoking Texas Business & Commerce Code § 305.053. Plaintiff now alleges that § 305.053 independently permits recovery because the same text messages allegedly violated 47 C.F.R. § 64.1200(c)(2). But the Northern District of Texas has held that § 305.053 does not provide liability where the underlying conduct does not support liability under the TCPA. *Pinn v. CycleBar Franchising, LLC*, 2023 WL 8374749, at *2 (N.D. Tex. Dec. 4, 2023). Plaintiff should not be permitted to use an implementing regulation and state-law cause of action to obtain a private remedy for text messages that Congress excluded from § 227(c)(5). Accordingly, Counts I and II should be dismissed under Rule 12(b)(6).

## II. RELEVANT ALLEGATIONS

In her Amended Complaint, Plaintiff alleges that, beginning in May 2026, she received promotional text messages on her cellular telephone number, which she claims had been registered on the National Do-Not-Call Registry since March 19, 2026. FAC ¶¶ 38, 45–48. Based exclusively on those text messages, Plaintiff asserts that Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). FAC ¶¶ 68–72.

In Count II, she further asserts a claim under the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. Plaintiff alleges that the same text messages violated 47 C.F.R. § 64.1200(c)(2) and that § 305.053(a) independently provides a cause of action for a communication that violates a regulation adopted under 47 U.S.C. § 227. FAC ¶¶ 73–82.

## III. LEGAL STANDARD

To survive a motion to dismiss, Plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Although the Court accepts well-pleaded factual allegations as true, it need not accept legal conclusions, conclusory allegations, threadbare recitations of statutory elements, or naked assertions devoid of factual enhancement. *Ortega v. Keller Williams Realty, Inc*, 2025 WL 1673914, at *3 (W.D. Tex. Feb. 26, 2025) (citations omitted).

## IV. ARGUMENT

### A. Count I Should Be Dismissed Because § 227(c)(5) Creates A Private Right of Action For "Telephone Calls," Not Text Messages.

Whether Plaintiff's alleged text messages fall within the private right of action created by § 227(c)(5) presents a pure question of statutory interpretation that this Court may resolve as a matter of law. In construing § 227(c)(5), the Court must consider not only the provision's text, but also its place within the TCPA as a whole, because courts read the words of a statute in their context, which includes the overall statutory scheme. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).

1. The Plain Text of § 227(c)(5), as Confirmed by *Steidinger*, Does Not Create a Private Right of Action for Text Messages.

The Court's analysis begins with the statutory text. Section 227(c)(5), the provision on which Plaintiff bases Count I, expressly limits its private right of action to "[a] person who has received more than one **telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). Plaintiff does not allege that she received any "telephone calls." Instead, her allegations are exclusively the receipt of SMS text messages. The threshold question, therefore, is whether Congress's use of the term "telephone call" in § 227(c)(5) encompasses a text message. It does not.

That distinction is significant because Congress knew how to distinguish between a telephone "call" and a "message" and expressly did so in the TCPA. Section 227(a)(4), for example, defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). Congress therefore used the broader phrase "telephone call or message" when defining the communications that can constitute a telephone solicitation, but chose materially narrower language when creating the private cause of action in § 227(c)(5). Rather than authorizing suit by anyone who received more than one unlawful "telephone solicitation" or "telephone call or message," Congress limited the private action to a person who received more than one "telephone call."

The United States Court of Appeals for the Seventh Circuit recently addressed this precise statutory question and held that § 227(c)(5) does not authorize a private action based upon text messages. *Steidinger*, 182 F.4th 532 (7th Cir. July 14, 2026). Like Plaintiff here, the plaintiffs in *Steidinger* sought relief under § 227(c)(5) based upon allegedly unwanted marketing text

messages. The Seventh Circuit held that text messages are not "telephone calls" within the meaning of § 227(c)(5) and affirmed dismissal of the claims.

Although *Steidinger* is not binding on this Court, it is directly on-point federal appellate authority addressing the precise statutory language at issue here. Its textual analysis is persuasive and should be followed. As *Steidinger* recognized, the ordinary meaning of a "telephone call" when Congress enacted the TCPA in 1991 did not encompass an SMS text message. *See Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017).

The ordinary meaning reaches the same result today. A "telephone call" and a "text message" describe different forms of communication. As the district court explained in *Jones*, "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899–900 (C.D. Ill. 2025), *aff'd sub nom. Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026). And where statutory language is unambiguous, the inquiry ends with the text. *See West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (stating that a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)); *Melvin*, 948 F.3d at 852.

Congress's subsequent amendments to the TCPA further confirm that "telephone call" and "text message" are not interchangeable. Section 227(e)(8), for example, expressly distinguishes between "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)–(B). Congress thus demonstrated that when it intends to regulate text messages, it knows how to say so. When Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the

terms superfluous. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Yet Congress has not amended § 227(c)(5) to extend its private right of action to a person who receives a "telephone call or text message." Treating those terms as synonymous would erase a distinction Congress itself has expressly drawn.

Nor is *Steidinger* an isolated decision. Other district courts to substantively address the issue have reached the same conclusion. *See Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (finding the statutory text clear and that a text message is not a telephone call); *Jones*, 792 F. Supp. 3d at 899 (holding § 227(c) does not apply to text messages based on the TCPA's plain language); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 25-5093, 2025 WL 3549868, at *1 (C.D. Cal. Dec. 3, 2025) (reading the ordinary meaning of "telephone call" to exclude "text message"); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 25-2811, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) (concluding that "only telephone calls are actionable under § 227(c)(5), not text messages"). The developing authority thus points in the same direction: the words Congress chose control. Section 227(c)(5) uses the more specific phrase "telephone call," and that statutory language should be given its ordinary meaning. An ordinary speaker does not describe sending a text message as making a "telephone call."

The Court should therefore follow *Steidinger* and hold that the private cause of action Congress created in § 227(c)(5) does not encompass Plaintiff's alleged text messages.

2. Under *Loper Bright* and *McLaughlin*, the Court Must Independently Interpret the TCPA as Written and Cannot Permit the FCC's Post-Enactment Orders to Expand § 227(c)(5)'s Private Right of Action.

This Court must independently determine whether § 227(c)(5)'s reference to a "telephone call" includes text messages. It does not. As *Irvin* recently recognized, "in light of *McLaughlin*,

this Court must independently—and without deference to the FCC's interpretation—evaluate Defendant's argument that the term 'telephone call' excludes text messages." *Irvin v. Sonic Indus. Servs., LLC*, 2026 WL 1098403, at *2 (N.D. Ga. Apr. 20, 2026).

In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled *Chevron* deference and restored to federal courts their traditional responsibility to determine the meaning of federal statutes. Courts must decide for themselves whether "the law means what the agency says," *id.* at 392, and must employ "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotation marks and citation omitted). Critically, the Supreme Court emphasized that "[e]very statute's meaning is fixed at the time of enactment." *Id.* (internal quotation marks and citation omitted).

The Supreme Court subsequently applied that principle specifically to FCC interpretations of the TCPA in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.* There, the Court held that district courts are not bound by the FCC's interpretation of the TCPA and instead must determine the statute's meaning "under ordinary principles of statutory interpretation." *McLaughlin*, 606 U.S. 146, 168 (2025). Accordingly, this Court must determine the best interpretation of § 227(c)(5) as enacted by Congress in 1991, without treating the FCC's subsequent policy decisions as controlling.

That matters here because text messages entered the TCPA regulatory framework through post-enactment FCC action rather than through the language Congress used in § 227(c)(5). In 2002, more than a decade after Congress enacted the TCPA, the FCC initiated a rulemaking intended in part to address "[n]ew technologies" that had emerged since the TCPA's enactment. *See Notice of Proposed Rulemaking*, 17 FCC Rcd. 17459 ¶ 1 (2002). The following year, the FCC stated that the term "call" under the TCPA "encompasses both voice calls and text calls." *In re*

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ¶ 165 (2003). Significantly, the FCC's 2003 discussion concerned the meaning of "call" in § 227(b), not the distinct phrase "telephone call" Congress used in § 227(c)(5). *Jones* likewise recognized that the 2003 Order "explicitly references only Section 227(b)." 792 F. Supp. 3d at 900. The agency's interpretation of "call" for purposes of § 227(b) therefore does not answer the distinct statutory question presented here under § 227(c)(5).

Subsequent courts often accepted the FCC's interpretation because *then-existing* administrative-law principles required or were understood to require deference to the agency. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015). That administrative history *cannot* substitute for the language Congress enacted. After *Loper Bright* and *McLaughlin*, the question is no longer whether the FCC has chosen to characterize a text message as a "call." The question is whether Congress used the phrase "telephone call" in § 227(c)(5) to encompass SMS text messages when it enacted that provision in 1991. It did not.

The surrounding statutory text reinforces that conclusion. Congress has demonstrated that it understands the difference between voice calls and text messages and knows how to regulate both expressly. In 2018, Congress amended § 227(e) concerning caller-identification information and expressly distinguished "a call made using a voice service" from "a text message sent using a text messaging service." *See* 47 U.S.C. § 227(e)(8)(A), (B). Where Congress uses different terms within the same statutory scheme, those different words should be given different meanings. Yet Congress did not amend § 227(c)(5) to authorize private suits based upon receipt of more than one "telephone call or text message." The Court should not supply language Congress chose not to enact.

Yet Congress did not amend § 227(c)(5) to authorize private suits based on the receipt of "telephone calls or text messages." The Court should not expand the statute beyond the language Congress enacted. Thus, even if an FCC regulation reaches certain marketing text messages, Plaintiff must still show that Congress created a private right of action for those communications under § 227(c)(5). *Steidinger* correctly holds that it did not.

3. Plaintiff Alleges Only Text Messages and Therefore Cannot Pursue a Private DNC Claim Under § 227(c)(5).

Plaintiff alleges only that she received text messages from Defendant beginning in May 2026. FAC ¶¶ 45–48. She does not allege that Defendant made a single telephone call to her. Instead, Count I is based entirely on text messages.

That distinction is dispositive. As explained above, § 227(c)(5) authorizes a private action only for a person who "has received more than one telephone call within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). And under *Loper Bright* and *McLaughlin*, the Court must independently apply the statutory language Congress enacted, rather than treat the FCC's later interpretation of the TCPA as controlling. *Steidinger* did exactly that and held that a text message is not a "telephone call" within the meaning of § 227(c)(5).

Plaintiff therefore cannot state a § 227(c)(5) claim merely by alleging that the texts qualify as "telephone solicitations" or otherwise fall within the FCC's regulations. Whatever the scope of those regulations, Congress separately limited the private right of action in § 227(c)(5) to the receipt of more than one "telephone call." As *Davis* explained, "however Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025).

Plaintiff alleges none. Accordingly, even accepting the FAC's factual allegations as true, Plaintiff has not alleged the conduct necessary to invoke § 227(c)(5)'s private right of action. Under *Steidinger*, Count I should be dismissed with prejudice.

### B. COUNT II CANNOT CIRCUMVENT THE LIMITS CONGRESS PLACED ON THE PRIVATE RIGHT OF ACTION UNDER § 227(c)(5).

Count II is based on the same text messages underlying Count I. Plaintiff now alleges that, even if those messages do not support a private action under § 227(c)(5), Texas Business & Commerce Code § 305.053(a) independently permits her to sue because the messages allegedly violated 47 C.F.R. § 64.1200(c)(2). FAC ¶¶ 73–82. Section 305.053(a) permits an action based on a communication that violates "47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A." TEX. BUS. & COM. CODE § 305.053(a).

The Northern District of Texas has rejected attempts to use § 305.053 to impose liability where the underlying conduct does not support liability under the TCPA. In *Pinn v. CycleBar Franchising, LLC*, the court explained that § 305.053 "proscribes only that conduct which is also prohibited by the TCPA" and that "[i]f no violation of the TCPA exists, there is no violation of the Texas TCPA." 2023 WL 8374749, at *2 (N.D. Tex. Dec. 4, 2023) (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014)).

That reasoning applies here. As explained above, Congress expressly limited the private right of action in § 227(c)(5) to a person who receives more than one "telephone call" within twelve months. Under *Steidinger*, the text messages alleged here do not satisfy that requirement. Plaintiff should not be permitted to use an implementing regulation—and a state-law cause of action incorporating that regulation—to obtain a private remedy for text messages that Congress did not authorize under § 227(c)(5). Accordingly, Count II should likewise be dismissed.

## V. CONCLUSION

For these reasons, Defendant respectfully requests that the Court dismiss Count I because Plaintiff alleges only text messages, not the "telephone calls" required to invoke the private right of action under § 227(c)(5), and dismiss Count II because Plaintiff cannot use § 305.053 to obtain a private remedy for the same communications that Congress excluded from § 227(c)(5). Defendant further requests such other relief to which it may be entitled.

Date: September 1, 2026

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Earl L. Ingle*

**Earl L. Ingle**
Texas Bar No. 24097234
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: 713.222.1470
Facsimile: 713.222.1475
eingle@munsch.com

**-AND-**

**Jenniffer Cabrera,** *pro hac vice*
J. Cabrera Law, P.A.
1825 NW Corporate Blvd, Ste. 110
Boca Raton, Florida 33431
Telephone: 561-834-0883
jc@jcabreralaw.com
***Counsel for Defendant Fast Response Heating & Cooling, LLC***

**OF COUNSEL:**

By: */s/ Maddison Craig*
**MADDISON CRAIG**
**MUNSCH HARDT KOPF & HARR, P.C.**
Texas Bar No. 24137348
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Phone: (214) 855-7570
mcraig@munsch.com