**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| CATHERINE SPOON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FAST RESPONSE HEATING & COOLING, LLC<br><br>Defendant. | No. 3:26-cv-01852 |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS**

## TABLE OF CONTENTS

**INTRODUCTION** ........ 1

**BACKGROUND** ........ 2

**ARGUMENT** ........ 3

**I. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages** ........ 3

**A. The Plain Meaning of the Word "Call" Includes Text Messages** ........ 5

**B. That Interpretation of the Word "Call" Aligns Section 227(c)'s Private Right of Action with Its Substantive Provisions** ........ 8

**C. The Other Federal Courts in Texas and Elsewhere in the Fifth Circuit That Have Considered This Question Got It Right** ........ 9

**II. Plaintiff Independently States a Claim Under the Texas Telephone Solicitation Act** ........ 11

**CONCLUSION** ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471 (N.D. Ill. 2009) ............. 6

*Alvarez v. Fiesta Nissan, Inc.*,
2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026) ............................................ 1, 4, 9–10

*Wilson v. Better Mortgage Corp.*, 2025 WL 3493815 (S.D. NY.) ........................................... 7

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ................................ 8

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .......................................................... 1, 4

*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021) .......................................... 10

*Duron v. Kings Capital Holding*,
2026 U.S. Dist. LEXIS 6340 (W.D. Tex. Jan. 13, 2026) ................................................ 1, 4, 10

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. 2025) .................................................. 8

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) ............................................... 6

*Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026) ............... 1, 4–5, 9

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) .................................... 7

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) .................................... 1, 4, 7, 10

*McGonigle v. Shopperschoice.com*,
2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026) ................................................ 1, 4, 10

*Perrin v. United States*, 444 U.S. 37 (1979) ........................................................................... 5

*Pinn v. CycleBar Franchising, LLC*, 2023 WL 8374749 (N.D. Tex. Dec. 4, 2023) ......... 13–14

*Steidinger v. Blackstone Medical Services, LLC*, 182 F.4th 532 (7th Cir. 2026)........1, 4, 10, 15

*Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354 (7th Cir. 2020) ........................................ 5

**Statutes**

47 U.S.C. § 227 .............................................................................................. 2, 11–14

47 U.S.C. § 227(a)(4) .............................................................................................. 1

47 U.S.C. § 227(b) .............................................................................................. 5–6

47 U.S.C. § 227(b)(1)(A)(iii) .............................................................................................. 6

47 U.S.C. § 227(c) .............................................................................................. 1–4, 7–10

47 U.S.C. § 227(c)(1) .......... 9

47 U.S.C. § 227(c)(3)(F) .......... 8

47 U.S.C. § 227(c)(5) .......... 1, 3, 7–8, 11–14

47 U.S.C. § 227(e)(8)(C) .......... 8

Tex. Bus. & Com. Code § 305.053(a) .......... 1–2, 11–14

**Regulations and Administrative Materials**

47 C.F.R. § 64.1200(c)(2) .......... 1–3, 12, 14

47 C.F.R. § 64.1200(f)(15) .......... 12, 14

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
18 FCC Rcd. 14014 (2003) .......... 6–8

30 FCC Rcd. 7961 .......... 6

38 FCC Rcd. 12247 .......... 6

88 Fed. Reg. 20800 .......... 6

**Other Authorities**

*Black's Law Dictionary* (6th ed. 1990) .......... 8

*Oxford English Dictionary* (2d ed. 1989) .......... 5, 8

*Random House Dictionary of the English Language* (2d ed. 1987) .......... 7

*Random House Webster's College Dictionary* (1991) .......... 5, 8

*Webster's Ninth New Collegiate Dictionary* (1991) .......... 7

## INTRODUCTION

Defendant's Motion asks this Court to adopt a newly minted interpretation of the TCPA that would remove text messages from the protections of the National Do-Not-Call Registry. Under Defendant's theory, a consumer who affirmatively registers her residential telephone number on the Registry may nevertheless receive unlimited unsolicited telemarketing text messages to that number because Congress used the words "telephone call" in § 227(c)(5) in 1991 before text messages existed. Neither the statutory text nor the governing authority supports that result.

Defendant relies principally on the Seventh Circuit's recent decision in *Steidinger v. Blackstone Medical Services, LLC*, 182 F.4th 532 (7th Cir. 2026). But *Steidinger* is neither controlling nor persuasive. The Ninth Circuit recently reached the opposite conclusion in *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026), holding that the ordinary meaning of "call" encompasses text messages. The Supreme Court has likewise recognized that "[a] text message to a cellular telephone . . . qualifies as a 'call'" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). And since *Loper Bright Enterprises v. Raimondo*, courts throughout the Fifth Circuit have independently examined the statutory language and consistently concluded that § 227(c) applies to text messages. *See, e.g.*, *Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155, at *10–17 (S.D. Tex. Jan. 26, 2026); *McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13–14 (M.D. La. Feb. 13, 2026); *Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026). Defendant asks this Court to reject that authority in favor of a single out-of-circuit decision.

Defendant's challenge to Plaintiff's Texas claim fails for an independent reason. Texas Business and Commerce Code § 305.053(a) expressly creates a cause of action for a person who receives a communication violating § 227 or "a regulation adopted under" § 227. Plaintiff alleges that Fast Response sent multiple telemarketing text messages to her residential number despite its registration on the National Do-Not-Call Registry, conduct prohibited by 47 C.F.R. § 64.1200(c)(2). ECF No. 15 ¶¶ 38–57, 74–81.

The Court therefore need not choose between protecting Plaintiff under federal or Texas law. Both apply. The TCPA's text, structure, and persuasive authority establish that text messages constitute calls for purposes of § 227(c), and Texas independently provides a cause of action for communications violating § 64.1200(c)(2). The Motion should be denied.

## **BACKGROUND**

Plaintiff Catherine Spoon brings this putative class action arising from Defendant Fast Response Heating & Cooling, LLC's transmission of unsolicited telemarketing text messages to residential telephone numbers registered on the National Do-Not-Call Registry. ECF No. 15 ¶¶ 1–7. Plaintiff alleges claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. *Id.* ¶¶ 2–5.

Plaintiff is a Texas resident whose cellular telephone number has been registered on the National Do-Not-Call Registry since March 19, 2026. ECF No. 15 ¶¶ 8, 37–38. She uses that number for personal, residential, and household purposes, is solely responsible for the bills associated with it, has never received business reimbursement or taken a business-related tax deduction for the number, and does not maintain a landline. *Id.* ¶¶ 39–43.

Beginning in May 2026, Plaintiff received multiple text messages from telephone number (817) 646-4456 that expressly identified "Fast Response" as the sender and promoted Defendant's heating and cooling services. ECF No. 15 ¶¶ 45–48. The messages advertised discounted services, including a "$29 AC Summer Safety Check" and a "$29 AC Tune-Up," and directed recipients to respond or call to schedule Defendant's services. *Id.* ¶¶ 49–54. Plaintiff alleges that these were Fast Response's own advertisements because they identified Fast Response, advertised only its services and promotional pricing, and directed recipients to schedule those services. *Id.* ¶ 54. Plaintiff further alleges that she never consented to these messages, never inquired about Defendant's services, and never otherwise initiated contact with Defendant. *Id.* ¶¶ 55–57.

Based on those communications, Count I alleges that Fast Response violated 47 C.F.R. § 64.1200(c)(2) by initiating multiple telephone solicitations to Plaintiff and other residential telephone numbers that had been registered on the National Do-Not-Call Registry for at least 31 days. ECF No. 15 ¶¶ 68–72. Count II alleges a separate claim under Texas Business and Commerce Code § 305.053(a), which authorizes an action by a person receiving a communication that violates 47 U.S.C. § 227 or "a regulation adopted under that provision." *Id.* ¶¶ 73–82. Plaintiff alleges that Fast Response's texts violated § 64.1200(c)(2), a regulation promulgated under § 227(c), and therefore independently give rise to liability under Texas law. *Id.* ¶¶ 75–81.

## ARGUMENT

### I. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages.

Defendant contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the DNC rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. And Defendant's arguments for its restrictive interpretation all fail. The company goes about interpreting the word "call" in section 227(c)(5) all wrong, appearing to invent statutory terms to support its arguments, and assigning "call" a meaning that is at odds with the rest of the statute in multiple ways. Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

It should come as no surprise then that Post *McLaughlin* and *Loper Bright*, the majority of courts have concluded that under the TCPA text messages are calls.[1] Courts in more than thirteen districts, and until last week, the only circuit court to have squarely addressed the issue—the Ninth Circuit—have held that the DNCR provision covers text messages. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. Jan. 13, 2026) (reaffirming text messages are "calls"). The Supreme Court has also weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'")—a proposition so uncontroversial that it was not even contested by the parties there. The Seventh Circuit's recent, lone departure in *Steidinger* does not disturb that consensus. As explained below, *Steidinger*'s reasoning does not withstand scrutiny, conflicts directly with *Howard*, and has no application within this Circuit,

[1] *See, e.g., Duron v. Kings Capital Holding,* 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026); *McGonigle v. Shopperschoice.com,* 2026 U.S. Dist. LEXIS 30157, at *13–14 (M.D. La. Feb. 13, 2026); *Alvarez v. Fiesta Nissan, Inc.,* 2026 U.S. Dist. LEXIS 14155, at *10–17 (S.D. Tex. Jan. 26, 2026).

where the district courts have spoken with one voice in reaching the opposite conclusion.

**a. The plain meaning of the word "call" includes text messages**

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the ordinary meaning of "call" in the TCPA is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3). Contemporaneous dictionaries confirm that meaning. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone"). Those definitions do not require an oral communication; they turn on the means of communication—the telephone. A text message sent to a telephone therefore falls comfortably within the ordinary meaning of a "call." *See Howard*, 164 F.4th at 1123–24.

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. And, absent contrary evidence, a statutory word or phrase

is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So, the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

The FCC has long endorsed that interpretation of the word "call." The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (Jul. 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And the FCC has adhered to that position ever since. *See* 30 FCC Rcd. 7961, 8020 ¶¶ 115–16; *Hernandez*, 2018 WL 6830220, at *1 ¶ 3*;* 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the

TCPA, text messages were not yet mainstream. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Medvidi*, 2025 WL 2856295, at *2. And texting didn't achieve widespread popularity until the 2000s.[2] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Raimondo*, 603 U.S. at 386 ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").

Nor does § 227(c)(5)'s use of "telephone call," rather than simply "call," change the analysis. The contemporaneous dictionaries on which Defendant itself relies did not define a "telephone call" as necessarily involving voice communication. They defined "call" as communicating or attempting to communicate "by telephone." *See*, *e.g.*, Webster's Ninth New Collegiate Dictionary (1991); Random House Dictionary of the English Language (2d ed. 1987). "Telephone" therefore identifies the medium of the communication; it does not impose an unwritten voice requirement. A text message sent by telephone remains a communication by telephone.

So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9. In sum, the FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3. The statute's structure confirms this reading.

---

[2] *See, e.g.*, David Crystal, *Toting: The Gr8 Db8* 4 (2008), https://perma.cc/M2Q3-FH44 ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008), https://perma.cc/CB7E-EZQZ (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

**b. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Much of Defendant's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id*. § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[3] So "call" and "message" both describe communication with a phone, and neither differentiates between oral

[3] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

and written mediums. Finally, the purpose of the DNC provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4. Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

**c. The other Federal Courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right.**

Consistent with the statute's text and structure, courts—particularly within the Fifth Circuit—have overwhelmingly held that text messages qualify as calls under the TCPA. Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls to texts. Luckily for consumers, the federal courts in the Texas and this Circuit have gotten the analysis correct. Most importantly, this precise issue has already been decided in Texas federal courts. In *Alvarez v. Fiesta Nissan, Inc.*, Judge Crane independently examined the ordinary meaning of "telephone call" at the time of the TCPA's enactment, the statutory context, and the structure of § 227(c), and concluded that a text message "falls reasonably within the literal language of the statute." 2026 U.S. Dist. LEXIS 14155, at *10–17 (S.D. Tex. Jan. 26, 2026). Judge Crane further concluded that both "the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls.'" *Id.* at *17. Accordingly, the court declined to dismiss the plaintiff's § 227(c)(5) claim. *Id.*

Defendant's criticism of *Alvarez* is misplaced. *Alvarez* did not defer to the FCC or rely on policy considerations. Applying the analysis required by *Loper Bright*, the court independently examined the ordinary public meaning of the statutory language in 1991, contemporaneous dictionaries, and the TCPA's statutory context and structure. *See Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *10–17. *Steidinger*'s subsequent disagreement with that analysis does not make *Alvarez* any less persuasive, much less require this Court to reject the conclusion already reached here in Texas.

Following Judge Crane, another court in the Fifth Circuit adopted the same analysis in *McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13-14 (M.D. La. Feb. 13, 2026). Other courts in the Fifth Circuit have unanimously followed. Indeed, Judge Love explained in the Eastern District of Texas, "As to the matter of whether text messages are covered under §§ 227(b) and (c), numerous federal courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages…*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the… TCPA.")…Naturally, this court would follow suit with respect to these provisions of the TCPA having been interpreted to cover text messages.".

Finally, as Judge Torres held recently, "The Court is persuaded by the reasoning of the overwhelming majority of cases confirming cell phones are residential phones for purposes of the act and more importantly, that text messages are actionable under §227(c)(5)." *Callier*, 2026 U.S. Dist. LEXIS 120642, *18; *see also Duron*, 2026 U.S. Dist. LEXIS 6340, at *12. The Fifth Circuit district courts, including multiple federal court judges in Texas, have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as

voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected. The Registry continues to protect numbers, not loopholes.

## II. Plaintiff Independently States a Claim Under the Texas Telephone Solicitation Act.

Fast Response's challenge to Count II ignores the statutory basis of the claim Plaintiff actually pleaded. Defendant argues that Plaintiff cannot recover under Texas Business and Commerce Code § 305.053 because, in its view, the text messages at issue are not independently actionable under the TCPA's private right of action in 47 U.S.C. § 227(c)(5). ECF No. 20 at 10. But Count II does not depend upon establishing a violation of § 227(c)(5). It rests on an independent cause of action expressly created by Texas law for a person who receives a communication that violates a regulation promulgated under the TCPA.

The statutory text is dispositive. Section 305.053(a) provides that "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication." TEX. BUS. & COM. CODE § 305.053(a) (emphasis added). The Legislature thus identified three alternative predicates for liability: a communication that violates (1) § 227 itself, (2) "a regulation adopted under" § 227, or (3) Subchapter A. *Id*. The Court must give effect to each of those alternatives. Defendant's proposed construction instead effectively deletes the second one by requiring a plaintiff who alleges a violation of an implementing regulation to also establish an independently actionable violation of § 227 itself.

Plaintiff pleads precisely the second statutory alternative. The Amended Complaint alleges that Plaintiff's cellular telephone number had been registered on the National Do-Not-Call Registry since March 19, 2026, and that she uses that number for personal, residential, and household purposes. ECF No. 15 ¶¶ 38–43. Beginning in May 2026, Fast Response sent multiple promotional text messages to that number advertising its heating and cooling services. Id. ¶¶ 45–54. Plaintiff never consented to those solicitations, never inquired about Fast Response's services, and never initiated contact that would have authorized them. Id. ¶¶ 55–57. The messages therefore constituted "telephone solicitations" under 47 C.F.R. § 64.1200(f)(15), and their transmission to Plaintiff's registered residential number violated § 64.1200(c)(2). Id. ¶¶ 69, 71, 77–79.

That is sufficient under the plain language of § 305.053(a). Section 64.1200(c)(2) is indisputably "a regulation adopted under" § 227, and § 305.053(a) expressly authorizes suit when a person receives a communication violating such a regulation. Indeed, Defendant's motion itself recognizes the distinction between the reach of the FCC's regulations and the scope of the federal private right of action. Defendant argues that "even if an FCC regulation reaches certain marketing text messages," Plaintiff must separately establish that § 227(c)(5) creates a federal private right of action for them. ECF No. 20 at 9. Whatever force that distinction may have as to Count I, it supports rather than defeats Count II. The Texas Legislature expressly chose to provide a state-law cause of action for receipt of a communication violating "a regulation adopted under" § 227. TEX. BUS. & COM. CODE § 305.053(a). Thus, even assuming arguendo that § 227(c)(5)'s federal cause of action does not extend to text messages, Defendant still must explain why its messages did not violate § 64.1200(c)(2) or why Texas cannot provide its own remedy for that regulatory violation. Its motion does neither.

*Pinn v. CycleBar Franchising, LLC*, 2023 WL 8374749 (N.D. Tex. Dec. 4, 2023), does not hold otherwise. There, the plaintiff received a single text message from CycleBar and asserted a single cause of action under § 305.053. Id. at *1. The precise dispute was whether § 305.053 permitted that plaintiff to avoid § 227(c)(5)'s requirement that a plaintiff receive "more than one telephone call within any 12-month period." Id. at *2. As the Court expressly framed the issue, "[t]he parties' argument centers on whether TBCC § 305.053 requires Pinn to allege more than one communication." Id. Because Pinn "ha[d] not pleaded more than one telephone communication from CycleBar," she had not pleaded a violation of either the TCPA or § 305.053. Id. at *3. That holding has no application to the pleading defect Defendant asserts here. Spoon alleges multiple telemarketing communications from Fast Response. ECF No. 15 ¶¶ 45–48, 69–71. Unlike the plaintiff in *Pinn*, therefore, Plaintiff does not seek to use Texas law to evade § 227(c)(5)'s numerical threshold. More fundamentally, Pinn never considered the statutory argument presented here. Although the opinion reproduced § 305.053(a), including its express reference to "a regulation adopted under" § 227, the issue before the court was whether the plaintiff's single communication satisfied the more-than-one-communication requirement. Pinn, 2023 WL 8374749, at *2–3. The Court did not address whether a communication may violate an FCC regulation adopted under § 227 even when a federal private cause of action is unavailable for some independent reason. Nor did it hold that the phrase "a regulation adopted under that provision" in § 305.053(a) has no independent effect. Pinn therefore does not answer the question Defendant asks this Court to decide.

Indeed, Defendant's interpretation creates a serious textual problem. If a plaintiff could sue under § 305.053(a) for a violation of a regulation adopted under § 227 only when that plaintiff also possessed a federal private cause of action under § 227, the Legislature's express

inclusion of "a regulation adopted under that provision" would do no independent work. The statute could simply have authorized suit for communications violating § 227. It did not. Instead, Texas expressly extended its cause of action to a person receiving a communication that violates § 227, or a regulation adopted under it. TEX. BUS. & COM. CODE § 305.053(a). Defendant offers no reason to disregard that statutory choice. The distinction is especially important here because § 64.1200(c)(2) itself prohibits initiating a "telephone solicitation" to a registered residential subscriber, and the regulations define "telephone solicitation" as the initiation of a telephone "call or message" for the purpose of encouraging the purchase of goods or services. 47 C.F.R. §§ 64.1200(c)(2), (f)(15). Plaintiff alleges that Fast Response sent precisely such promotional messages to her registered residential number. ECF No. 15 ¶¶ 45–57, 77–80. The Texas Legislature expressly made receipt of a "communication" violating such a regulation actionable under § 305.053(a). The Court need not decide that Defendant also violated § 227(c)(5) to give effect to that independent Texas remedy.

Accordingly, even if Defendant ultimately prevailed on its argument that § 227(c)(5) does not itself provide a federal private right of action for text messages, that would not dispose of Count II. Plaintiff has pleaded that she received communications originated by Fast Response that violated § 64.1200(c)(2), a regulation adopted under § 227, and § 305.053(a) expressly provides a cause of action for those communications. Pinn addressed a materially different deficiency—a plaintiff who received only one communication—and does not authorize the Court to disregard the independent regulatory predicate expressly contained in § 305.053(a). The motion to dismiss Count II should therefore be denied.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Fast Response Heating & Cooling, LLC's Motion to Dismiss in its entirety. Plaintiff plausibly alleges that Defendant sent multiple unsolicited telemarketing text messages to her residential telephone number after that number had been registered on the National Do-Not-Call Registry. The TCPA's text and structure, the Supreme Court's treatment of text messages as "calls," the Ninth Circuit's decision in *Howard*, and the consistent decisions of district courts throughout the Fifth Circuit establish that text messages fall within § 227(c)'s protections. The Seventh Circuit's contrary decision in *Steidinger* is not binding and provides no basis to dismiss Count I.

Count II independently survives regardless of the disposition of Count I. Section 305.053(a) expressly authorizes a Texas cause of action for receipt of a communication that violates "a regulation adopted under" § 227, and Plaintiff alleges that Defendant's telemarketing messages violated 47 C.F.R. § 64.1200(c)(2). *Pinn* does not hold otherwise. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

RESPECTFULLY SUBMITTED AND DATED this 2nd day of September, 2026.

*/s/ Anthony Paronich*
Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*/s/ Sharon K. Campbell*
Sharon K. Campbell State Bar # 03717600
6220 Campbell Rd, Suite 300
Dallas, Texas 75248
Telephone: 214-351-3260
Sharon@SharonKCampbell.com

*Attorneys for Plaintiff*