**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

**CATHERINE SPOON,** on behalf of herself and others similarly situated,

Plaintiff,

v.

**Case No. 3:26-cv-01852-N**

**FAST RESPONSE HEATING & COOLING, LLC,**

Defendant.

_______________________________________/

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Fast Response Heating & Cooling LLC ("Fast Response" or "Defendant"), through its undersigned counsel, respectfully submits this Reply in Support of its Motion to Dismiss Plaintiff Catherine Spoon's First Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and states as follows:

## I. INTRODUCTION

Plaintiff's Opposition confirms the narrow question before the Court: whether Congress' decision to authorize a private action for a person who receives more than one "telephone call" permits suit by a person who received only text messages. Plaintiff alleges no telephone calls. She instead asks the Court to treat "telephone call," "message," and "text message" as interchangeable, despite Congress's use of those terms separately throughout the TCPA.

Plaintiff relies heavily on decisions that either accepted the FCC's treatment of text messages as calls or reached that result under their own interpretation of the statute. But *McLaughlin* makes clear that this Court must independently determine the meaning of § 227(c)(5). *See McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 160 (2025).

The decisions applying that framework to this precise issue support dismissal. The Seventh Circuit held in *Steidinger v. Blackstone Medical Services, LLC*, 182 F.4th 532 (7th Cir. 2026), that § 227(c)(5) does not encompass text messages. Since then, two district courts have followed *Steidinger* and rejected materially the same arguments Plaintiff advances here. *Rush v. SelectQuote Insurance Services, Inc.*, No. 6:26-CV-03157-MBB, 2026 WL 2495598, at *2–4 (W.D. Mo. July 30, 2026); *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, No. 1:26-CV-433, 2026 WL 2673068, at *1–3 (M.D. N.C. Sept. 3, 2026). *Card*, decided one day after Plaintiff filed her Opposition, expressly found *Steidinger* more persuasive than the district-court decisions Plaintiff asks this Court to follow.

The same result should follow here.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER § 227(C)(5).

### A. McLaughlin requires the Court to independently interpret § 227(c)(5), not defer to the FCC.

Plaintiff acknowledges *McLaughlin*, but then advances the very approach *McLaughlin* rejected. *See generally, McLaughlin*, 606 U.S. 146. She argues that because Congress delegated regulatory authority to the FCC, "any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control." Opp. at 4. That is no longer the law. *McLaughlin* holds that district courts "are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation . . . ." 606 U.S. at 155.

*Rush* recently rejected the same argument in the context of § 227(c)(5). There, the plaintiff argued that the FCC was authorized to "fill up the details" under *Loper Bright* and that Congress expressly delegated authority to the FCC through § 227(c). 2026 WL 2495598, at *3. The court disagreed. Although Congress authorized the FCC to promulgate regulations, "it did not delegate

authority to the FCC to define the scope of § 227(c)(5)'s private right of action." *Id.* The court therefore independently interpreted the statute and held that text messages are not "telephone calls" under § 227(c)(5). *Id.* at *2–3.

*Card* reached the same conclusion. It recognized that, before *Steidinger*, courts often presumed § 227(c)(5) encompassed text messages "based largely on the recognition that the FCC had interpreted the statute in this manner since 2003." 2026 WL 2673068, at *1. But *McLaughlin* "changed the standard for judicial deference to agency statutory interpretation and called into question such decisions relying on the FCC's interpretation." *Id.*

Plaintiff cannot have it both ways. She cannot acknowledge that *McLaughlin* requires independent judicial interpretation and then argue that statutory uncertainty means the FCC's judgment "controls." The FCC may regulate within the authority Congress delegated to it. But it cannot determine the scope of the private cause of action Congress created. Whether Plaintiff received the "telephone calls" required by § 227(c)(5) is therefore a question of statutory interpretation for this Court.

**B. Plaintiff Improperly Focuses on "Call" Rather Than the Statutory Phrase "Telephone Call."**

Plaintiff's ordinary-meaning argument begins with dictionary definitions of the isolated word "call." She argues that because "call" could mean an attempt "to communicate" by telephone, a text message qualifies. Opp. at 5. But § 227(c)(5) does not say "call." It authorizes suit by a person who receives more than one "telephone call."

Both *Steidinger* and the courts following it have rejected Plaintiff's precise argument. In *Rush*, the plaintiff likewise argued that "call" included "any attempt to communicate by telephone" and that text messages therefore qualified. 2026 WL 2495598, at *2. The court rejected that

approach because the relevant statutory term is "telephone calls," whose ordinary meaning in 1991 did not include text messages. *Id.*

*Card* confronted the same argument. The plaintiff relied on the 1991 definition of "call" as "to get or try to get into communication by telephone" and reasoned that a text message qualifies because it communicates between telephones. 2026 WL 2673068, at *2. The court explained that this reasoning "isolates the word 'call'" and ignores that Congress used the phrase "telephone call." *Id.* Following *Steidinger*, it concluded that in 1991 a "telephone call" could not have meant a text message because a telephone was understood as an instrument for reproducing sounds, not sending text messages. *Id.*

The same flaw runs through Plaintiff's Opposition. The question is not whether the word "call," divorced from its statutory context, can be stretched to describe different forms of communication. The question is what Congress meant by "telephone call" when it enacted § 227(c)(5). *Steidinger*, *Rush*, and *Card* answer that question consistently: the phrase does not encompass text messages.

**C. Congress' Use of Different Terms Confirms That "Telephone Call" Does Not Include Text Messages.**

The statutory context reinforces that conclusion. Congress knew how to encompass both calls and messages when it wanted to. Congress defined "telephone solicitation" to include a "telephone call or message," 47 U.S.C. § 227(a)(4), but authorized a private action under § 227(c)(5) only for a person who receives more than one "telephone call." That difference matters. "When Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1372 (M.D. Fla. 2026) (quoting *Fernandez v. Seaboard Marine LTD.,* 135 F.4th 939, 958 (11th Cir. 2025) (citations omitted)). Treating "telephone call" as encompassing

a "message" or "text message" would erase the distinction Congress expressly drew between the two terms.

Plaintiff attempts to turn the broader definition of "telephone solicitation" into a reason to expand § 227(c)(5). But *Card* rejected that structural argument as well. It held that the difference between Congress' use of "telephone call" in the private right of action and "telephone solicitation" elsewhere in subsection (c) supports distinguishing the terms, rather than treating them as interchangeable. 2026 WL 2673068, at *2.

The distinction between subsections (b) and (c) points the same way. Section 227(b) refers broadly to "any call," while § 227(c)(5) uses the more specific phrase "telephone call." As *Rush* explained in following *Steidinger*, that "difference in language" supports the conclusion that § 227(c)(5) does not reach text messages. 2026 WL 2495598, at *4.

Congress could have used "call," "call or message," or "telephone solicitation," in § 227(c)(5). It did not. The Court should give effect to the language Congress chose.

**D. *Campbell-Ewald, Cranor*, and cases interpreting § 227(b) do not answer the question presented here.**

Plaintiff relies heavily on *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), but that case addressed § 227(b)(1)(A)(iii), where the Court stated that it was "undisputed" that a text message qualifies as a "call." *Id.* at 156. It did not consider whether a text message constitutes the "telephone call" required by § 227(c)(5). *Rush* recognized that distinction, noting that *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021), later described *Campbell-Ewald* as merely "assum[ing]" that a text message qualifies as a call under § 227(b)(1)(A)(iii). 2026 WL 2495598, at *4. *Campbell-Ewald* therefore does not answer the question presented here.

Nor does *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021), decide the issue. *Cranor* involved text messages under § 227(b), not the private right of action in § 227(c)(5).

Plaintiff's reliance on *Cranor*'s general observation that the TCPA addresses "robocalls and robotexts" does not establish that Congress made every form of communication regulated somewhere in the TCPA privately actionable under § 227(c)(5).

The same problem defeats Plaintiff's pager argument. Plaintiff reasons that because § 227(b)(1)(A)(iii) refers to calls to paging services, "call" must encompass written communications. But § 227(c)(5) does not contain that paging-service language, and § 227(b) prohibits "any call," not the narrower "telephone call" used in § 227(c)(5). *Rush* considered and rejected this same argument. 2026 WL 2495598, at *4.

That the TCPA regulates text messages in some circumstances is therefore beside the point. Defendant does not contend otherwise. The question is whether Plaintiff satisfies the particular statutory condition Congress imposed on the private right she invokes. Section 227(c)(5) requires more than one "telephone call." Plaintiff alleges none.

**E. *Steidinger* Is Part of a Growing Line of Authority Holding That § 227(c)(5) Does Not Reach Text Messages.**

Plaintiff emphasizes *Howard v. Republican National Committee*, *Alvarez*, *Duron*, *McGonigle*, and other decisions reaching a contrary conclusion. Defendant does not dispute that courts have divided on the issue. But those decisions are not binding, and the question before this Court is not resolved by counting cases.

More importantly, Plaintiff's portrayal of *Steidinger* as a lone departure from an otherwise settled consensus is no longer accurate. *Rush* followed *Steidinger* on July 30, 2026, independently concluding that the plain meaning of "telephone calls" does not encompass text messages and rejecting the plaintiff's reliance on FCC regulations and § 227(b). 2026 WL 2495598, at *2–4.

Notably, just one day after Plaintiff filed her Opposition, *Card* considered the same arguments Plaintiff advances here and found them unpersuasive. Specifically, *Card* considered the

district-court decisions extending § 227(c)(5) to text messages and concluded that those decisions were "not as persuasive as *Steidinger*." 2026 WL 2673068, at *3.

Thus, *Steidinger* does not stand alone against an otherwise uniform body of authority. It is part of a growing line of decisions holding that § 227(c)(5)'s reference to "telephone calls" does not encompass text messages. *Davis v. CVS Pharmacy, Inc.,* 797 F. Supp. 3d 1270, 1272–74 (N.D. Fla. 2025) (holding § 227(c)(5) does not encompass text messages); *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same); *Radvansky v. 1-800-Flowers.com, Inc.,* 2026 WL 456919, at *3–5 (N.D. Ga. Feb. 17, 2026) (same); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1372–73 (M.D. Fla. 2026) (same); *Rush*, 2026 WL 2495598, at *2–4 (same); *Card,* 2026 WL 2673068, at *1–3 (same).

Plaintiff's policy arguments do not change the result. She warns that excluding text messages would undermine the National Do-Not-Call Registry and create a loophole for telemarketers. But courts cannot enlarge a statutory cause of action to avoid a perceived policy gap. As *Rush* explained in rejecting the same type of argument, even "the most formidable policy arguments cannot overcome a clear statutory directive." 2026 WL 2495598, at *2 (quoting *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 245 (2021)).

Congress can amend § 227(c)(5) if it intends to authorize private suits based on text messages. The Court should not do so for Congress.

Thus, Count I should be dismissed.

## III. PLAINTIFF CANNOT AVOID THE LIMITS OF THE TCPA'S PRIVATE RIGHT OF ACTION THROUGH § 305.053.

Plaintiff argues that Count II survives even if Count I fails because Texas Business and Commerce Code § 305.053(a) authorizes suit for a communication that violates "a regulation

adopted under" § 227. According to Plaintiff, because § 64.1200(c)(2) reaches text-message solicitations, Texas law independently supplies the private remedy that § 227(c)(5) does not.

That argument does not answer *Pinn v. CycleBar Franchising, LLC*, 2023 WL 8374749 (N.D. Tex. Dec. 4, 2023). *Pinn* held that § 305.053 "proscribes only that conduct which is also prohibited by the TCPA" and that "[i]f no violation of the TCPA exists, there is no violation of the Texas TCPA." *Id.* at *2. The court described the two as "coextensive."

Plaintiff attempts to distinguish *Pinn* because the plaintiff there alleged only a single communication. But the factual reason the claim failed in *Pinn* does not erase the court's construction of § 305.053. Nor did *Pinn* overlook the language Plaintiff emphasizes here. The statute before the court expressly included the same "regulation adopted under" language on which Plaintiff now relies.

More fundamentally, Plaintiff's Count II theory depends on the same conflation that runs through Count I: the difference between conduct the FCC may regulate and conduct Congress made privately actionable. *Rush* makes that distinction particularly clear. Congress delegated authority to the FCC to promulgate regulations under § 227(c), but "it did not delegate authority to the FCC to define the scope of § 227(c)(5)'s private right of action." *Rush,* 2026 WL 2495598, at *3.

Plaintiff's theory would nevertheless permit an FCC regulation to accomplish indirectly what it cannot accomplish directly. Under her reading, the FCC may regulate text solicitations, that regulation then becomes independently actionable under Texas law and the result is a private damages action for the same text messages that Congress did not include within § 227(c)(5). That cannot be squared with *Pinn*'s treatment of § 305.053 and the TCPA as coextensive.

Giving effect to the phrase "a regulation adopted under" § 227 does not require the sweeping interpretation Plaintiff advances. Section 227(c)(5) itself makes violations of regulations prescribed under subsection (c) an element of the federal cause of action. The regulation determines whether the underlying conduct violates the regulatory requirements; it does not rewrite the separate statutory requirement that the plaintiff have received more than one "telephone call." Likewise, reading § 305.053 to give effect to its reference to regulations does not require treating every communication reached by an FCC regulation as privately actionable notwithstanding the limitations Congress placed on the underlying statutory scheme.

Plaintiff therefore cannot use § 305.053 and § 64.1200(c)(2) to circumvent the limitation that defeats Count I. Under *Pinn*, Count II should be dismissed as well.

## IV. CONCLUSION

For these reasons, Defendant respectfully requests that the Court dismiss Count I because Plaintiff alleges only text messages, not the "telephone calls" required by § 227(c)(5), and dismiss Count II because § 305.053 cannot be used to obtain a broader private remedy than the TCPA permits. Defendant further requests such other relief to which it may be entitled.

Respectfully submitted,
**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Earl L. Ingle*
**Earl L. Ingle**
Texas Bar No. 24097234
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: 713.222.1470
Facsimile: 713.222.1475
eingle@munsch.com
**-AND-**
**Jenniffer Cabrera,** *pro hac vice*
J. Cabrera Law, P.A.
1825 NW Corporate Blvd, Ste. 110
Boca Raton, Florida 33431
Telephone: 561-834-0883

jc@jcabreralaw.com

***Counsel for Defendant Fast Response Heating & Cooling, LLC***

**OF COUNSEL:**

By: */s/ Maddison Craig*___________
**MADDISON CRAIG**
**MUNSCH HARDT KOPF & HARR, P.C.**
Texas Bar No. 24137348
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Phone: (214) 855-7570
mcraig@munsch.com

## CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned counsel for the Defendant certifies the foregoing document has been filed with the Court and served upon all known counsel of record via the Court's electronic case filing system on September 16, 2026.

*/s/ Earl L. Ingle*____________
Earl L. Ingle